UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ELAINE KLEIN,

                        Plaintiff,              **MEMORANDUM OF**
                                                          **DECISION & ORDER**
              -against-                    CV 14-2719 (AYS)

GEORGE FRENKEL and
RICHARD FRENKEL,

                        Defendants.
---------------------------------------------------------------X

**APPEARANCES:**

**DAVID BOLTON, P.C**.
BY: DAVID BOLTON, ESQ.
Attorney for Plaintiff
666 Old Country Road
Garden City, New York 11530

**LAW OFFICES OF ABEL L. PIERRE**
Attorneys for Defendants
BY: ABEL L. PIERRE, ESQ.
140 Broadway, 46th Floor
New York, New York 10005

**SHIELDS, Magistrate Judge:**

This is a case commenced by Plaintiff Elaine Klein ("Plaintiff" or "Elaine") seeking repayment of a loan she alleges to have been extended to Defendants George Frenkel ("George") and Richard Frenkel ("Richard") (collectively "Defendants" or the "Frenkels"). Presently before this Court is Defendants' motion for summary judgment.

FACTUAL BACKGROUND

I.       <u>The Kleins and the Frenkels</u>

1

The facts set forth below are gleaned from the parties' submissions in this matter including their statements pursuant to Rule 56.1 of the Local Rules of this Court, affidavits and deposition testimony.

As noted, this case arises out of a loan that Plaintiff states she extended personally to Defendants George and Richard Frenkel. Plaintiff is a citizen of Canada. Both Defendants are citizens of the State of New York. Plaintiff's husband is an individual named Barry Klein. Until a divorce in the year 2000, Barry Klein's sister was married to Defendant George Frenkel.

II.     The Loan and the Parties' Positions with Respect Thereto

Following the divorce between George Frenkel and Barry Klein's sister, Mr. Klein maintained a relationship with George Frenkel. That relationship appears to have extended to 2012, when George Frenkel asked Barry Klein for a loan in the amount of $500,000 (the "Loan"). George Frenkel does not dispute that on January 17, 2012, $500,000 was wired from Plaintiff's account to George's personal bank account.

A series of e-mails are submitted by Plaintiff, and are presently before the Court in the context of this motion. Those e-mails were sent among Barry Klein, his accountant and assistant Helaine Uliano ("Uliano") and George Frenkel. A previous decision in this case issued by the Honorable Arthur D. Spatt (to whom this case was originally assigned) makes clear that these e-mails are admissible in this action. See Docket Entry herein ('DE") 57 at 12-17. They outline and support Plaintiff's version of events surrounding the Loan.

First, there are e-mails dated January 11, 2012 between Barry Klein and Uliano that took place over a short period of time during the late afternoon of that date. On that day, Barry Klein asked Uliano to "arrange a loan" to George Frenkel and his brother in the amount of $500,000. It also states that "he" will give Uliano a promissory note that will be due in one year. Uliano's

2

reply to that e-mail asks where to make the loan from, noting what appears to be her opinion that Barry Klein might not have the cash to cover the loan. In an e-mail dated the same day from Barry Klein to George Frenkel (copied to Uliano) Barry Klein states that he needed a few days to determine where the cash for the loan would come from. E-mails demonstrate that Barry Klein asked Uliano to provide him with a form promissory note, which she did. An e-mail dated January 15, 2012, from Barry Klein to Uliano, referencing the "George frenkel loan" refers to the source of the loan, stating "Let's make it from esk jpm". The "esk" appears to refer to Elaine Klein and "jpm" appears to refer to an account controlled only by Elaine Klein.

Referring to the terms of the Loan to include in the form promissory note, Barry Klein tells Uliano that there should be no interest charged. He also tells her to ask for "His brothers name". Taken in context, this is clearly a request for the name of George Frenkel's brother. Barry Klein's January 15, 2012 email to Uliano also includes contact information for George and Richard Frenkel. In an e-mail dated January 17, 2012, Uliano asked Barry Klein if the loan is "to his brother," and Barry Klein responds, "to both". The Loan was ultimately funded from an account in the name of Plaintiff Elaine Klein. As noted, there is no question but that the $500,000 was wired to the personal account of George Frenkel.

There are also before the Court a series of e-mails between George Frenkel and Uliano. Those e-mails are dated January 17, 2012, and corroborate completely Plaintiff's version of events. They indicate George Frenkel's understanding that Uliano was handling the details of the Loan. They also indicate Richard Frenkel's status as a co-borrower on the Loan. Finally, those e-mails evidence the fact that Uliano transmitted a promissory note for George and Richard Frenkel to sign, and the return of the signed note that is the subject of this action.

The course of events outlined by the above-referenced e-mails is also supported by the declarations of Barry Klein and Uliano, which are before the Court. Thus, Barry Klein's declaration states that George Frenkel came to him "in a time of need," and Barry arranged for Elaine to help George and his brother by loaning them $500,000. He explains that Uliano told him that he did not have the liquid funds to make the requested loan. After discussing the matter with his wife, Plaintiff Elaine Klein, the loan was made from her account. Uliano's declaration submitted in opposition to Defendants' motion also supports Plaintiff's version of the events, as set forth in Barry Klein's declaration and supported by the contemporaneous e-mails of January 2012. Thus, Uliano's declaration states that she received Barry Klein's e-mail requesting that she arrange for a loan to be made to George Frenkel and his brother. That declaration further states that Uliano told Barry Klein that he lacked sufficient cash to make the loan, and that she was thereafter directed to make the loan from Elaine Klein. Uliano states that all of her communications with regard to the Loan were made via e-mail, including the above-referenced e-mails with George Frenkel.

A copy of the promissory note alleged by Plaintiff to have been prepared by Uliano pursuant to the above-referenced e-mails, and executed in connection with the Loan is before the Court (the "Note"). The Note names both George Frenkel and Richard Frenkel as borrowers and lists their home addresses. There is no reference to any purpose for the loan, and no reference to any business held by either George or Richard Frenkel. The Note is a copy of what appears to be an original Note. That Note bears the handwritten signatures of both Defendants– who dispute having signed the Note. No party has produced the original Note. Plaintiff states that she received the signed Note only via e-mail, and claims that she was never provided with an

4

original. It is Defendants' position that the Note is a forgery, and that therefore no such original ever existed.

Defendants do not argue that the proceeds of the Loan were never received. While George Frenkel admits in his deposition (as he must) that the $500,000 was wired to his personal bank account, he states that those funds were thereafter used for business purposes. He argues that purported conversations with Barry Klein, as well as his transfer of funds to pay business expenses is proof that he is not personally liable to repay the Loan. In George's version of the facts, the $500,000 transmitted was not a personal loan to him or his brother. Instead, George states that the Loan was made to a business – a corporate entity known as Lions Gate Group, NY, Inc. ("LGGNY"). LGGNY is stated to have been owned jointly by George and Richard Frenkel.

It is Defendants' position that only LGGNY is liable to pay the Loan. The only evidence offered in support of Defendants' version of the events is that the money transferred into George Frenkel's personal account was ultimately used for the business expenses of LGGNY. There is no evidence that any proceeds of the Loan were transferred directly to any business entity owned by George or Richard Frenkel. Nor is there evidence that funds were transferred into any personal account owned by Richard Frenkel, although it is clear that he was a partner with his brother in LGGNY. For his defense, Richard Frenkel argues only that his signature on the Note is forged.

The evidence put forth by Defendants with regard to the purported business nature of the Loan has not changed since Plaintiff first moved for summary judgment in 2014. Thus, at this point in the proceedings, despite the opportunity to produce additional information, neither George nor Richard Frenkel have provided any copies of a loan agreement or document listing

LGGNY as the entity in debt for the $500,000 wired from Elaine Klein to the personal account of George Frenkel.

As the foregoing makes clear, there is no question but that $500,000 was, indeed transferred from the account of Elaine Klein to the personal account of George Frenkel. At dispute is the purpose of the Loan (whether it was business or personal), whether the copy of the Note bears forged signatures of the Frenkels, the necessity of producing the original Note, and whether Defendants are entitled, as they argue in this motion, to summary judgment dismissing all of Plaintiff's claims.

## PROCEDURAL BACKGROUND

I. <u>Prior Motion Practice and Rulings as to Applicable Law</u>

While this is the third motion for summary judgment filed in this matter, the two prior motions were made by Plaintiff, and not by Defendants. Those motions were denied in decisions issued by the formerly assigned District Judge prior to the parties' consent to the jurisdiction of this Court for all purposes. The rulings on those motions are detailed herein only to the extent they inform the Court's decision as to the presently pending motion.

In its decision on the first motion for summary judgment the District Court made clear, as mentioned above, that the e-mails submitted by Plaintiff are admissible. That Court also made clear that it is the law of the State of Connecticut that applies to the Note. DE 57 at 18-19. The District Court discussed Connecticut law and held that, if valid, Plaintiff is the holder of the Note with the power to enforce its terms. DE 57 at 20. The Court also noted that the signatures on the Note are entitled to the presumption of authenticity. DE 57 at 21-22. However, the Court held that Defendants had come forward with evidence sufficient to challenge the authenticity of their signatures. Therefore, Plaintiff's motion for summary judgment on the Note was denied. DE 23.

That motion was denied without prejudice to renew at the close of discovery. In addition to denying the motion for summary judgment, the District Court gave Plaintiff leave to amend to assert additional causes of action. DE 5 at 24.

Plaintiff took advantage of the District Court's invitation to amend, and filed an amended complaint herein on February 27, 2015. DE 59. On September 8, 2016, Plaintiff moved for partial summary judgment against George Frenkel on her claims for breach of contract, unjust enrichment and money had and received. DE 90. In a decision dated May 30, 2017, that motion was denied. See DE 95. After setting forth the standard of law applicable to each cause of action, the District Court once again held that George Frenkel had raised a sufficient question of fact regarding the authenticity of his signature so as to require denial of the motion. DE 95 at 8-12.[1]

Presently before the court is a third motion for summary judgment in this action. This time it is the Defendants, and not the Plaintiff, moving for summary judgment. The court turns to discuss the merits of that motion.

## DISCUSSION

I.  Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.

---

1. The parties agree that New York law applies to Plaintiff's claims other than that for breach of the Note. As stated herein, that Note has already been determined to be governed by Connecticut law.

7

2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

II.     The Motion is Denied

In the context of this motion it is the Defendants' burden to show that a reasonable factfinder could not find in favor of the Plaintiff, and that Defendants are entitled to judgment as a matter of law. This burden is not met.

As to recovery on the Note, Plaintiff can prevail under the Connecticut law, if she can meet the burden of proving that the Note in her possession was indeed signed by the Defendants. She can rely on the e-mails discussed above, and the copy of the Note that she has produced as evidence in support of her case. Plaintiff can also rely on this evidence to support her other

8

causes of action. Defendants can argue their forgery theory, and any argument as to the parties' intent in making the Loan at trial. As the District Court held, there are, "material issues of credibility that permeate this case." Now that discovery is closed, those issues remain. Therefore, a trial is necessary.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, appearing as Docket Entry No. 121 herein, is denied.

Dated: Central Islip, New York
March 19, 2019

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge